UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MAURICE J. SICARD** | **CIVIL ACTION** |
| **VERSUS** | **NO: 05-3022** |
| **ISLAND OPERATING CO., INC., ET AL.** | **SECTION: "K"(2)** |

## ORDER AND REASONS

Before the Court is the Motion for Summary Judgment (Rec.Doc.No. 68) of Defendant Island Operating Company, Inc. ("Island Operating"), who moves for summary judgment based upon both its Cross-Claim against Sea Boat Rentals, Inc. ("Sea Boat") and Third Party Complaint (Rec.Doc.No. 42) against Indemnity Insurance Company of North America and Centennial Insurance Company (collectively "indemnity insurers"). Defendant Sea Boat and its indemnity insurers in their opposition to the instant motion also ask for summary judgment seeking a declaration by the Court that they are not obligated to indemnify Island Operating for

1

costs incurred due to these proceedings.¹ After reviewing the pleadings, memoranda, and relevant law, the Court finds that Defendant Sea Boat and its indemnity insurers are not obligated to indemnify Island Operating for its litigation costs, and hereby grants Sea Boat's motion for summary judgment for the reasons assigned below.

## II. BACKGROUND

**A.     Plaintiff's Claim**

On or about July 21, 2004, Plaintiff Maurice Sicard, while employed with Oilfield Professional Contractors, Inc., was allegedly injured while attempting to transfer a piston from the deck of the M/V SEA OTTER to an oil platform owned by Orca. During the transfer, Plaintiff claims that a crane being operated by Island Operating lifted the piston too soon and injured Mr. Sicard's thumb. *See* Compl., at ¶ 5 (Rec.Doc.No. 1). Plaintiff filed suit on July 19, 2005, and subsequently amended the Complaint adding Sea Boat Rentals, Inc. ("Sea Boat") as a defendant. *See* Second Am. Compl., at ¶ 1 (Rec.Doc.No. 35).² It is also alleged that Sea Boat

---

¹ Sea Boat does not file its own motion for summary judgment, but as articulated by the Fifth Circuit, "where one party moves for summary judgment the district court, in an appropriate case, may grant summary judgment against the movant, even though the opposite party has not actually filed a motion for summary judgment." *Landry v. G.B.A*, 762 F.2d 462, 464 (5th Cir. 1985 (*citing* Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2720.

² Sea Boat Rentals, Inc. had incorrectly been designated as Sea Otter, Inc. *See* First Am. Compl., at ¶ 1 (Rec.Doc.No. 3).

owned the M/V SEA OTTER at the time the injury took place.

B.     **The Participants**

There are several entities involved in this dispute, and a brief synopsis of their identity and roles is warranted. The occasion for these relationships is oil and gas exploration on the Outer Continental Shelf in the Gulf of Mexico. Mover Island Operating contracted with ORCA Management, L.L.C. ("Orca") to "provide certain personnel to assist with the oil and gas operations on South Timbalier 53 platform ('ST53')." Mot. Summ. J., at p. 2 (Rec.Doc.No. 68).

To meet the demands of Orca as well as other customers, C&G contracted with Sea Boat to provide the offshore support vessels. This agreement was entered into on December 11, 2001, and is called the Master Time Charter.

C&G Boats, Inc. ("C&G"), which is not a party to this litigation, had agreed to provide to Orca offshore support vessels to use in connection to the oil and gas exploration. *Id.* This agreement entered into on February 12, 2004, is called the Master Service Agreement.

Also involved in this litigation are the insurers for Sea Boat, Centennial Insurance Company and Indemnity Insurance Company of North America.

Both the Master Service Agreement and Master Time Charter have provisions that provide for the assignment of liability between the contracting parties as well as such provisions for third parties who become involved with the contracting parties' oil exploration activities. Moreover, the contracts contain provisions detailing the scope of liability coverage and who is

responsible for retaining insurance. The contractual indemnity and insurance provisions are the focus of the Court's inquiry with regard to the instant motion for summary judgment.

## II. LEGAL STANDARD

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.  "[M]ere allegations or denials" will not defeat a well-supported motion for summary judgment. Fed. R. Civ. P. 56(e).

Rather, the non-movant must come forward with "specific facts" that establish an issue for trial. *Id*.

When deciding a motion for summary judgment, the Court must avoid a "trial on the affidavits." *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are tasks for the trier-of-fact. *Id*. To that end, the Court must resolve disputes over material facts in the non-movant's favor. "The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed." *Leonard v. Dixie Well Service & Supply, Inc*., 828 F.2d 291, 294 (5th Cir. 1987).

### III. ANALYSIS

**A.     Legal Standard for Indemnity Agreements in Maritime Contracts**

It is not disputed that federal maritime law applies to the instant motion. Generally, indemnity agreements in maritime contracts are to be strictly construed. *Smith v. Tenneco Oil Co., Inc.*, 803 F.2d 1386, 1388 (5th Cir. 1986) (*citing Marathon Pipeline v. Drilling Rig ROWAN/ODESSA*, 527 F.Supp. 824, 835 (E.D. La. 1981) (Arceneaux, J.), *aff'd*, 699 F.2d 240 (5th Cir. 1983). As this Court has previously stated, under federal maritime law, indemnity contracts are construed "to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties." But a contract of indemnity "should not be

read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986) (*citing Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981).

**B.     Third Party Beneficiary**

This dispute in this cross-motion for summary judgment centers around contractual provisions in two contracts that allegedly create indemnity obligations owed by Defendant Sea Boat to Defendant Island Operating, a putative third party beneficiary to the contracts. It is not disputed that in order for a contract to create an actionable right to a non-contracting party, the contracting parties must manifest the intent to create such a right for the third party beneficiary.[3] Restatement (2d) of Contracts, Section 302. Thus, the question before the Court is whether such an intent is evident in the agreements.

---

[3] Federal maritime law recognizes the validity of the third party beneficiary theory of contracts as state in the Restatement of Contracts. *Greenslate v. Tenneco Oil Co.*, 623 F.Supp. 573, 576 (E.D. La. 1985) (Mentz, J.).

**C.     Intent**

       **i.     The Master Time Charter (C&G – Sea Boat)**

The Master Time Charter was executed on December 11, 2001, by C&G Boats, Inc. ("C&G") as Charterer and Sea Boat Rentals, Inc. ("Sea Boat") as owner of the vessels. The purpose of the agreement was that Sea Boat would let C&G "hire vessels, as may from time to time be requested by [C&G] for use by its customers, and as available." *See* Mot. Summ. J., Exhibit A, at p. 1 (Rec.Doc.No. 68).

       **a.     The Contractual Indemnity Provision**

Along with language warranting certain conditions of the vessels provided by Sea Boat to C&G, the Master Time Charter also has several paragraphs dedicated to the scope of Sea Boat's duty to defend and indemnify for liabilities arising out of the charter arrangement. Mover Island Operating points to the following passage of the Master Time Charter as the basis for its assertion that Sea Boat is contractually obligated to defend and indemnify Island Operating:

> OWNER and CHARTERER recognize that in connection with the provision of a vessel pursuant to this Master Time Charter and/or any agreement bound in accordance herewith, accidents, and events may occur in which property is lost, damaged and/or destroyed, and/or in which persons may be killed and/or injured, and/or which may result in the illness of persons. OWNER and CHARTERER further recognize that certain of said risks may be

> covered by insurance as provided in this Master Time Charter. Notwithstanding said insurance provisions, it is further understood and agreed that OWNER agrees to defend, indemnify and hold CHARTERER and its customer harmless from and against any claim for damage to property owned by any person or entity, or for personal injury, illness to or death of any person, regardless of how such damage, injury, death or illness arose, or in any way, directly or indirectly, arising out of the operation, manning, navigation, or other activities of the vessel, including loading and off-loading cargo and personnel, and regardless of whether caused by the sold or contributing fault, negligence, or strict liability, including unseaworthiness of vessel) of OWNER, CHARTERER, CHARTERER'S customer, or any other person or entity. Notwithstanding the foregoing, the indemnity provided to CHARTERER hereunder shall be no greater than the indemnity owed by CHARTERER to customer under the terms of CHARTERER'S AGREEMENT, in any, with its customer.

*Id.*, Exhibit A, at p. 5.

Notable in this provision is that there no definition of customer and that there is limitation language in the last sentence that provides Sea Boat's indemnity "shall be no greater than the indemnity owed by CHARTERER to customer" *Id.* In this way, Sea Boat seeks to make its indemnity obligation co-extensive with that of C&G. Clearly, Island Operating is not a party to this agreement; however, it is possible that it qualifies as a customer of C&G. The only definition of "customer" is found in the insurance provisions of the agreement. Thus, to determine the scope of Sea Boat's contractual indemnity obligations, the Court must determine whether Island Operating qualifies as a customer of C&G under the terms of the Master Time Charter.

### b. Insurance Provisions

The following paragraphs require Sea Boat to procure comprehensive general liability insurance coverage and Property and Indemnity ("P & I") insurance coverage, and contain the only definition of "customer" in this agreement. The CGL provision provides:

> Comprehensive General Liability coverage in an amount not less than $1,000,000.00 including broad form contractual liability insurance, completed operations coverage, which includes the following endorsement:
>
> > When the named assured(s) herein working for C&G Boast, Inc., pursuant to either verbal or written agreement, it is hereby agreed that C&G Boats, Inc., its related affiliated companies, agent, employees, servants, and shareholders, (hereinafter 'C&G') and any entity with whom C&G may have contracted with to supply the services of the vessel(s), whether by time charter or other form of agreement, their agents, servants, sub-contractors, employees, joint lessees, co-venturers, and related, subsidiary and affiliated corporations, (hereinafter collectively referred to as 'customer') are hereby named as additional assureds with a full waiver of subrogation against C&G and customer...Underwriters agree to provide C&G with thirty (30) days written notice of cancellation; provided, however, that the coverage available to customer hereunder shall be no greater than coverage required to be provided by C&G under the terms of its agreement with customer.

*Id.*, Exhibit A, at p. 5.

Similarly, he P & I insurance provision of the requires the following endorsement to be

included in the insurance policy:[4]

> When the vessels named herein working for C&G Boast, Inc., pursuant to either verbal or written agreement, it is hereby agreed that C&G Boats, Inc., its related affiliated companies, agent, employees, servants, and shareholders, (hereinafter 'C&G') and any entity with whom C&G may have contracted with to supply the services of the vessel(s), whether by time charter or other form of agreement, their agents, servants, sub-contractors, employees, joint lessees, co-venturers, and related, subsidiary and affiliated corporations, (hereinafter collectively referred to as 'customer') are hereby named as additional assureds with a full waiver of subrogation against C&G and customer...Underwriters agree to provide C&G with thirty (30) days written notice of cancellation; provided, however, that the coverage required to be provided by C&G under the terms of its agreement with customer.

*Id.*, Exhibit A, at p. 4.

The insurance endorsement requirements are identical with respect to the definition of what constitutes a "customer" under the agreement.[5] Under this definition, Island Operating qualifies as a subcontractor of Orca, which is clearly a customer of C&G under its agreement with Orca. Thus, the Court finds that Island Operating is a customer of C&G under the terms of

---

[4] The last sentence of the P & I endorsement is grammatically incorrect, and it is alleged that a line was inadvertently deleted from the sentence. *Id.* With respect to this language in the P & I endorsement, Sea Boat argues that the Court should apply the language the same way as it would the last sentence in the CGL endorsement. Sea Boat provides an affidavits of Magnus J. Arceneaux, II, President of C&G Boats, and Philip J. Chaisson, Jr., President of Sea Boat Rentals, Inc., who affirm that a typographical error was made in the P & I endorsement. *See* Opp. Mot. Summ. J., Exhibits 2 & 3 (Rec.Doc.No. 80). During Oral Argument, counsel for Island Operating acknowledged that there is a typographical error in the P & I endorsement and it was intended that the provision read just as the CGL endorsement. Thus, the Court finds that the last P & I provision was intended to be written just as the last sentence of the CGL endorsement.

[5] However, the CGL endorsement is different from the P & I endorsement in that the former covers the named assured(s) and the latter covers the Sea Boat vessels.

the Master Time Charter.

Sea Boat contends that their duty to obtain insurance is limited by the last sentence of the CGL and P & I endorsements, wherein its duty to provide coverage for C&G's customer is limited to what insurance coverage C&G agreed to provide to its customer in a separate agreement. Thus, just as in the contractual indemnity provisions of the Master Time Charter, Sea Boats insurance obligations to third party customers of C&G only extends as far as C&G's duty to insure its own customers. This, of course, requires an examination of the Master Service agreement, which is a contract between C&G and its customer, Orca.

### ii.     Master Service Agreement (C&G – ORCA)

As indicated above, the Court must look to C&G's contracts with its customers to determine the scope of Sea Boat's indemnity and insurance obligations under the Master Time Charter. Island Operating, as a subcontractor of Orca, is a customer under the Master Time Charter, and thus, Sea Boat's duty to indemnify and/or provide insurance to Island Operating depends on the obligations of C&G to its customers.

The relevant agreement in the context of this dispute is the Master Service Agreement. The Master Service Agreement was entered into by Orca Management, L.L.C. ("Orca") and C&G on February 12, 2004. The agreement provided that C&G was to perform as contractor certain work, ostensibly related to oilfield services, at the behest of Orca. *See* Opp. Mot. Summ. J., Exhibit 4 (Rec.Doc.No. 80). The agreement provided that C&G was to be considered an

independent contractor and "that neither Contractor nor Contractor's principals, partners, employees, or subcontractors, are servants, agents, or employees of Orca." *Id.*, Exhibit 4.

In the section entitled "Insurance", this agreement provides that C&G would procure and maintain insurance

> in favor of Orca, its subsidiary, affiliated and related companies, and their working interest owners, co-lessees, co-owners, ~~contractors and subcontractors and any others for whom any of the foregoing may be acting~~, and the agents, directors, officers, employees of any one or more of the above-named or described parties (hereinafter all collectively referred to as "Orca Parties") in the minimum amounts outlined in Exhibit "A" attached hereto and made a part hereof. It is expressly understood and agreed that certain minimum standards of insurance protection are afforded by Contractor and the specifications herein of any amount or amounts shall be construed to support ~~but not in any way to~~ and limit the liabilities and indemnity obligations of Contractor. Coverage under all insurance required to be carried by Contractor will be the primary insurance and exclusive or any other existing and valid collectible insurance and each policy will name Orca as additional insured and waive subrogation against the Orca Parties and their insurers.
> ~~In the event that liability for any loss or damage is denied by Contractor's underwriter or underwriters, in all or in part because of breach of said insurance by Contractor, or for any other reasons, or~~ [I]f Contractor fails to maintain any of the insurance herein required, Contractor shall hold harmless, defend, and indemnify the Orca Parties against all claims, which would otherwise be covered by said insurance, regardless of any negligence or fault of the Orca Parties.

*Id.*, Exhibit 4.

It is clear from the paragraphs quoted above the C&G agreed to procure insurance for Orca, making Orca an additional assured. Sea Boat points to the stricken language contending that such manifests the intent of C&G to limit its duty to insure only to Orca parties, and because Island Operating is not an Orca party, C&G has no duty to insure Island Operating. There is also

12

the language "but not in any way" that is struck from the paragraph, and replaced with "and," which when read as edited suggests that C&G expressly intended to limit its liability and indemnity obligations to Orca parties.

In the section entitled "Indemnity", there are provisions which requires C&G to:

> defend, indemnify and hold the Orca Parties (as previously defined in paragraph 3.1) harmless from and against all losses, claims, demands, liabilities or causes of action of every kind and character, in favor of any person or party, for injury to or illness, death of, or damage to property of, Contractor or its employees or any subcontractor or employee of subcontractor of Contractor, which injury, illness, death or property damage arise out of or is incident to the Work performed under this Agreement.

*Id.*, Exhibit 4.

The scope of C&G's contractual indemnity is limited to Orca Parties, which is defined by reference to the definition in the insurance provision, and does not include subcontractors of Orca. That is, by virtue of the stricken language, Island Operating does not qualify as an Orca party.

### D.    Sea Boat's Duties to Orca

The liability for the accident that is the subject of this litigation involves P & I coverage. *See* Opp. Mot. Summ. J., Exhibit 7 (Rec.Doc.No. 80). Sea Boat submits evidence that its P & I underwriter, Indemnity Insurance Company of North America and Centennial Insurance

Company, agreed to assume the defense costs of Orca in connection with the instant litigation pursuant to terms of the P & I policy. *Id.* However, Sea Boat specifically denies that Orca was entitled to contractual indemnity under the Master Service Agreement, despite being entitled to status as an additional assured. *See* Opp. Mot. Summ. J., at p. 11 & Exhibit 6 (Rec.Doc.No. 80).

The reason for this distinction is because in the "Insurance" section of the Master Service Agreement, C&G agrees to procure and maintain insurance for Orca parties. Orca, therefore, is an additional assured, while Island Operating is not.[6] The section entitled "Indemnity", however, extends the contractual indemnity only to Orca parties for liability arising from "injury to or illness, death of, or damage to property of, Contractor or its employees or any subcontractor or employee of subcontractor of Contractor." *See* Opp. Mot. Summ. J., Exhibit 4 (Rec.Doc.No. 80). Clearly, Plaintiff Sicard was not an employee of C&G or an employee of C&G's subcontractors. Thus, contractual indemnity for his injury is not owed by C&G to Orca.

### E.    Contractual Indemnity Obligation of Sea Boat to Island Operating

---

[6] The P & I endorsement in the Master Service agreement requires C&G to obtain for Orca parties:

> Protection and indemnity insurance on SP 23 or equivalent with a minimum combined single limit of 1,000,000.00. Such policy shall contain coverage for contractual liability, chartered vessels, wreck removal, crew members, collision liability, and pollution liability (including cleanup per Water Quality Improvement Act as amended and third party bodily injury and property damage pollution liability).

*See* Mot. Summ. J., Master Service Agreement, Exhibit A-2 (Rec.Doc.No. 68).

Looking to the contractual indemnity provision in the Master Time Charter, the Court finds that Sea Boat has no contractual duty to indemnify Island Operating by virtue of the limiting language contained in the last sentence of the provision. This language provides that "the indemnity provided to CHARTERER hereunder shall be no greater than the indemnity owed by CHARTERER to customer under the terms of CHARTERER'S AGREEMENT, in any, with its customer." *See* Mot. Summ. J., Exhibit A, at p. 5 (Rec.Doc.No. 68).

It is certainly clear that Island Operating is not the charterer, and though it qualifies as a customer, no contractual indemnity is owed because C&G has no contractual duty to indemnify Island Operating. The scope of C&G's indemnity obligation is found in the Master Service Agreement, and the stricken language clearly indicates that C&G was not going to assume the defense costs of Orca's subcontractor, Island Operating.

### E.     Island Operating as an Additional Assured

Island Operating contends that its status as a sub-contractor coupled with the Master Time Charter language which provides that "sub-contractors... (hereinafter collectively referred to as 'customer') are hereby named as additional assureds" obligates Sea Boat and its indemnity insurers to pay for Island Operating's defense costs. *See* Mot. Summ. J., Exhibit A, at p. 4 (Rec.Doc.No. 68).

Indeed, this broad language makes the scope of Sea Boat's duty to insure quite

expansive. Such a duty is limited by the language in the Master Time Charter which provides "that the coverage available to customer hereunder shall be no greater than coverage required to be provided by C&G under the terms of its agreement with customer." *Id.*, Exhibit A, at p. 5.

In this way, the Court must look to the Master Service Agreement, which is an agreement between C&G and its customer Orca, to determine the bounds of Sea Boat's obligation to insure. This contractual model leaves the parameters of Sea Boat's duty to insure ultimately at the discretion of C&G and its customers.

Island Operating contends that this limiting language only applies to Sea Boat's contractual duty to indemnify and does not affect Island Operating's status as an additional assured. Island Operating supports this distinction noting that Sea Boat agreed to indemnify Orca not because of a contractual indemnity provision, but rather, because of Orca's status as additional assured under Sea Boat's P &I insurance policy. *See* Reply, at p. 5-6 (Rec.Doc.No. 88); *see also* Opp. Mot. Summ. J., Exhibit 7 (Rec.Doc.No. 80); *see also* Order (Rec.Doc.No. 59).

This distinction was explained above as arising from C&G's incongruous obligations to indemnify and obtain insurance in the Master Service Agreement. Under the Master Service Agreement, C&G was obligated to obtain insurance for Orca parties covering loss arising from the work performed under the Master Service Agreement. At the same time, however, C&G had a limited contractual obligation in the Master Service Agreement to indemnify Orca parties for liability arising from, *inter alia*, injury to C&G's employees or employees of C&G's subcontractors.

Despite Island Operating's contentions, the Court finds that applying the plain meaning

16

of the limiting language in the reformed P & I endorsement, and reading the endorsement as a whole, precludes a finding that Island Operating is an additional assured under the insurance provisions of the Master Time Charter. *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984) (Indemnity agreements in maritime contracts should be read as a whole and its words given their plain meaning unless the provision is ambiguous) (*citing Lirette v. Popich Bros. Water Transport, Inc.*, 699 F.2d 725, 728 (5th Cir. 1983); *Ogea v. Loffland Bros. Co.*, 622 F.2d 186, 189 (5th Cir. 1980)). *See also Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332 (5th Cir. 1981).

The last sentence of the P & I provision, which should read as that in the CGL provision, limits Sea Boat's duty to obtain insurance to that duty of C&G. That is, Island Operating would only be an additional assured under Sea Boat's policy if C&G agreed to name Island Operating as an additional assured. In fact, C&G clearly limited its duty to insure to Orca as evidenced by the stricken language in the Master Time Charter. The Court, thus, finds that Island Operating is not entitled to a judgment that Sea Boat or its indemnity insurers must pay for Island Operating's defense costs in the instant litigation. Accordingly,

**IT IS ORDERED** that Island Operating's Motion for Summary Judgment (Rec.Doc.No. 68) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that judgment in favor of Sea Boat and its indemnity insurers, is hereby **GRANTED** such the Cross-Claim and Third Party Complaint (Rec.Doc.No. 42) is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, on this  21st  day of February, 2007.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**